IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

LAWRENCE "LARRY" LEE RAMIREZ                                                    PLAINTIFF

v.                                    CASE NO.  08-5038

SHERIFF KEITH FERGUSON;
CAPT.  HUNTER PETRAY;
DEPUTY POP; and
DR.  HUSKINS                                                                    DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Lawrence "Larry" Lee Ramirez (Plaintiff) filed this *pro se* civil rights action under 42 U.S.C. § 1983 on February 22, 2008.  (Doc. 1)  Defendants filed a Court-ordered Motion for Summary Judgment (Doc.  17), which is now pending before the Court.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), this case is referred to the undersigned by the Honorable Chief Judge Jimm Larry Hendren for the purpose of issuing a report and recommendation on Defendants' Motion for Summary Judgment.  Accordingly, the undersigned issues this Report and Recommendation.

**I. Background**

Plaintiff's claims stem from the time he was incarcerated in the Benton County Detention Center.  Plaintiff claims during this time he was denied adequate medical treatment, his requests went unanswered, he was denied access to the law library, he was denied freedom of religion, and he was subjected to excessive force.

The claim of denial of adequate medical treatment appears to be related to both medications and to seeing mental health professionals.  On July 7, 2007, Plaintiff was booked into the Benton County Detention Center.  (Doc. 22, ¶ 2). Although Dr.  Huskins evaluated Plaintiff on July 11, 2007, Plaintiff states there was no evaluation of his mental state, and that he had been given

medications from Dayspring Behavioral Health and was given sufficient medications to last beyond the time of his arrest. (Doc. 22, ¶ 3). Plaintiff states these medications were not provided to him during his time in Benton County. On July 15, 2007, Plaintiff put in a request for his medications and asked if Dayspring Behavioral health could be contacted, and the response by the jail staff was that Dayspring had been faxed, but no reply had been received. (Doc. 20, Ex. 4). Plaintiff again filed a grievance regarding his "mental health medication" on July 25, 2007. (*Id.*) On that same date, the jail staff stated "will show records to jail doctor when we get them." (*Id.*). Plaintiff stated that between July 11, 2007 and July 20, 2007 he requested medical care which was not provided, but there is no grievance in the record for this time frame, other than the request dated July 15, 2007, as noted above. (Doc. 22, ¶ 7).

Plaintiff was transferred to the Benton County Jail from the Larimar County Jail in Fort Collins, Colorado on November 6, 2007. (Doc. 22, ¶ 4). In Larimar County Jail, Plaintiff had been evaluated by a certified psychiatrist and was prescribed Zoloft, zyprexa, and lamictal. (*Id.*). Plaintiff stated he began taking these medications on or around September 30, 2007, about one month before he was transferred to Benton County. Plaintiff stated he was not under a doctor's care at the time of booking on November 6, 2007. (*Id.*) Plaintiff did not bring medications with him, but the transport officer was sent with an official sheet and logs of medication Plaintiff hand been taking. (Doc. 22, ¶ 5).

On December 19, 2007, Plaintiff filed a medical request stating he had asked his lawyer to request the Judge to court-order Plaintiff's mental health medication, and asking the jail to let him know "when you have been informed." (Doc. 20, Ex. 4). On that same day, the jail staff responded they "have not heard anything." (*Id.*) On December 26, 2007, Plaintiff filed a medical request "to

be seen by mental health." The response was to "see dr." on that same date. (*Id*.) Plaintiff did see the doctor on December 27, 2007; he also saw the doctor on January 6, 2008. (Doc. 22, ¶ 6). Plaintiff states he was not called for a doctor's visit on February 3, 2008, however there are no records before the Court indicating Plaintiff had a doctor's appointment scheduled at this time, or that he missed an appointment. (*See* Doc. 22, ¶7). Plaintiff's next request regarding his mental health did not occur until February 12, 2008, when Plaintiff requested to see Ozark Guidance and stated the medication he received "wasn't for my problems." (*Id*.) Plaintiff saw the doctor on February 13, 2008. (Doc. 22, ¶ 6). On this date, until February 25, 2008, Plaintiff was taking 20 mg of Thoridazine. (Doc. 22, ¶¶ 8, 10). On February 22, 2008, Plaintiff asked to have his mental health medication increased, and the response was to see the doctor. (*Id*.) Plaintiff saw the doctor on February 24, 2008. (Doc. 22, ¶6). On February 24, 2008, Plaintiff dosage of Thoridazine was increased from 20 mg to 30mg per day. (Doc. 22, ¶ 11). Plaintiff continued receiving 30mg of Throidazine until March 26, 2008. Another request, made on March 7, 2008, also appears to be requesting a change in medications. (Doc. 20. Ex. 4). The response to this request was "Dr. 3/12." (*Id*.)

Plaintiff further claims he was denied access to the law library. Plaintiff states he was representing himself on the charges of public intoxication, resisting arrest, criminal mischief and possession of a controlled substance. (Doc. 22, ¶ 13). The record before the Court shows Plaintiff filed a request to go to the library on December 30, 2007. (Doc. 20, Ex. 4). The response to the request was that Plaintiff had attorneys of record listed, and he needed to contact those attorneys. (*Id*.) On January 3, 2008, Plaintiff again requested to use the law library. (Doc. 20, Ex. 4). This request was approved on the same day. (*Id*.) There are no other requests to use the law library.

Plaintiff states he had to plead guilty "in fear that I would remain in Benton County Jail." (Doc. 22, ¶ 13.)

Plaintiff's denial of freedom of religion claim stems from when Deputy Pop told Plaintiff he could have one religious book and two regular books. (Doc. 22, ¶ 16). Plaintiff states he had a Book of Mormon in his possession and Deputy Pop took his Bible, stating Plaintiff could only have one religious book. (*Id.*, ¶ 15). Plaintiff states Deputy Pop "could have taken a regular book" and Pop's failure to do so denied Plaintiff his freedom of religion. (*Id.*) Plaintiff filed a grievance on this matter on December 29, 2007, stating "the Mormon Bible is not 'another book' but an addition to the Bible.. . .I want to posses a Bible also if possible . . .." (Doc. 20, Ex. 4). The response by Captain Petray was that he would "check on your Mormon book" and also responded to some of Plaintiff's concerns about Deputy Pop, which were also part of the grievance. There were no more grievances filed on this issue.

Regarding Plaintiff's claim of excessive force, Plaintiff states when he arrived at he Benton County Detention Center on July 7, 2007, he had been taking medication along with alcohol and marijuana at the time of his arrest and he does not remember the events until he woke up or "came to" in the holding cell in Benton County Detention Center. (Doc. 22, ¶¶ 17, 24). Plaintiff assumed he had been asleep because he woke up on the floor. (Doc. 22, ¶ 24). Plaintiff states he got up, and knocked on the window of the cell, when officers charged the cell, shackled him, and began to lift and drop him several times. (*Id.*) Plaintiff states he was not ordered to the back of his cell before Defendants Tomlin, Vanatta and Torres entered the cell. (*Id.*, ¶ 25). Plaintiff then states he was slammed to the floor and he had no time to react and/or resist. (*Id.*, ¶ 26). Deputy Vanatta cuffed Plaintiff's hands and the cuffs and shackles were fastened together in a "hog tie" manner. (*Id.*)

Plaintiff had bruises and abrasions from the tightness of the cuffs and shackles. (*Id*.). Later, the shackles were removed, although Plaintiff has no indication of the amount of time which passed.

Defendants state when Plaintiff arrived at the Benton County Detention Center on July 7, 2007, he refused to exit the car. (Doc. 17). Plaintiff was then carried into the intake area and was cuffed. (*Id*.) Plaintiff refused to comply with orders and was resisting. (*Id*.) He was placed in a cell where he began hitting the door and refused to stop hitting and continued to curse. (*Id*.) Plaintiff was ordered to the back of the cell when the door opened, and he refused to comply, so a one second burst of OC spray was delivered to his facial area. (*Id*.) Plaintiff was decontaminated from the spray. Plaintiff was returned to his cell, but began punching the door. (*Id*.) Sgt. Tomlin ordered Plaintiff to stop, but Plaintiff refused. Plaintiff was ordered back to his cell three times and refused. Sgt. Tomlin and Deputy Vanatta placed Plaintiff on the floor and Deputy Torres placed shackles on Plaintiff's feet. Deputy Vanatta cuffed Plaintiff's hands and the cuffs and shackles were fastened together in a five point restraint. (Doc. 20, ex. 2). The incident occurred at approximately 0400 hours. (Doc. 20, Ex. 2). At approximately 0600 hours the cuffs and shackles were removed. (*Id*.)

## II. Discussion

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56 (c). The court views the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *See Adkison v. G.D. Searle & Co.*, 971 F.2d 132, 134 (8th Cir.1992). The moving party has the burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### A. Official Capacity Claims

Plaintiff states he is suing the Defendants in both their official and individual capacities. Plaintiff's official capacity claims are tantamount to suing Benton County. Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). Because *Monell* specifically rejected liability based solely on *respondeat superior*, *id.* at 691, "[a] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes,* 21 F.3d 277, 280 (8th Cir.1994). Rather, official-capacity liability must be based on deliberate indifference or tacit authorization. *Id.*

Policy or custom official-capacity liability is imposed by 42 U.S.C. § 1983 only for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Monell,* 436 U.S. at 690-91. The Eighth Circuit has upheld the grant of summary judgment because a plaintiff failed to plead that the defendant "had a policy or custom of false arrests or malicious prosecution." *Sanders v. Sears, Roebuck & Co.*, 984 F.3d 972, 976 (8th Cir. 1993).

When asked to state the custom, policy or procedure of Benton County which was responsible for the constitutional violations, Plaintiff restated his claims against the Defendants with regard to failure to provide health care or carry out medical orders. (Doc. 22, ¶ 1). However, Plaintiff also stated Benton County had a policy of providing no mental health staff and a procedure at intake which was not adequate to screen mental health problems.

The constitutional requirement for inmates to receive needed medical care includes the

requirement they receive needed mental health care. *See Cody v. Hilliard*, 599 F. Supp. 1025. 1058 (8th Cir. 1984) (holding "[t]he adequacy of a prison's mental health care system is governed by the same constitutional standard which applies when determining the adequacy of a prison's medical and dental health care system.") Staffing shortages, delays in care, and failure to follow through on needed treatment have all be found to violate the Constitution. See e.g., *Carty v. Farrelly*, 957 F. Supp. 727 (D.V.I. 1997) (prison medical staff that was unqualified to properly identify mental illnesses violated the Eighth Amendment); *Alberti v. Sheriff of Harris County, Texas*, 406 F. Supp. 649, 677 (S.D. Tex. 1975) (must obtain services of psychiatrist); *Terry ex rel. Terry v. Hill*, 232 F. Supp. 2d 934 (E.D. Ark. 2002) (state of Arkansas violated due process rights of pretrial detainees, found by courts to be in need of mental health evaluation or treatment prior to adjudication of their fitness to stand trial, by making them wait inordinate time for service); *Ramos v. Lamm*, 639 F. 2d 559, 577 (10th Cir. 1980) (lack of psychiatrist caused impermissible delay in mental health services); *Arnold on Behalf of H.B. v. Lewis*, 803 F. Supp. 246, 253 (D. Ariz. 1992) (lack of screening part of liability).

In the Motion for Summary Judgement (Doc. 17) and Brief in Support (Doc. 18), Defendants do not address the issues of what, if any screening for mental health problems the Benton County Detention Center provides. Likewise, the record also shows no indication of what psychiatric care, if any, is available to inmates at the Benton County Detention Center. As these are fact questions which must be answered to determine if Benton County has constitutionally adequate screening for mental health problems and constitutionally adequate care for mental health problems, it is my recommendation that Defendants Motion for Summary Judgment be DENIED as to the official capacity claims stemming from these policies and/or procedures.

**B. Individual Capacity Claims**

<u>1. Medical Care</u>

Plaintiff claims he was denied medical care as he did not receive his prescription medications, and he was not taken to see mental health professionals.

Deliberate indifference may be exhibited by prison medical personnel in responding to prisoners' needs or by prison officials in intentionally denying or delaying access to care or interfering with prescribed treatment. *See Meloy v. Bachmeier,* 302 F.3d 845, 849 (8th Cir. 2002). Disagreement with the course of treatment provided to an inmate is not sufficient basis for an Eighth Amendment violation. *Kayser v. Caspari,* 16 F.3d 280, 281 (8th Cir. 1994).

When Plaintiff was booked into the Benton County Detention Center, he was evaluated within four days by the jail doctor, Dr. Huskins. While Plaintiff characterizes the evaluation of July 11, 2007 as being inadequate because Dr. Huskins did not address Plaintiff's "emotional state," that matter is addressed above. There is no dispute Plaintiff was evaluated by a physician, and that he alerted the physician as to his medications and his previous health care provider (Dayspring Behavioral Health).

Additionally, on July 11, 2007 Dr. Huskins noted Plaintiff had a prescription for Amblify on April 20, 2007, with one refill within thirty days fo that date. Plaintiff's record showed he had been off medication for three months, and did not have any proof of current prescriptions.

Likewise, the record shows Dr. Huskins and the staff of the Benton County Jail were attempting to contact Plaintiff's mental health providers. For example, Plaintiff's grievance on July 15, 2007 shows Dayspring had been faxed, but was not responding to the jail. Again, on July 25, 2007 the jail responded to Plaintiff's inquiry regarding his medication that the records will be

"shown to the jail doctor when we get them," indicating an ongoing attempt to obtain these medications, or at least Plaintiff's records. Plaintiff obtained a bond on August 3, 2007.

While there certainly appears to be a delay obtaining information regarding Plaintiff's prescriptions, there is also a clear record of Defendants attempts to obtain Plaintiff's medical information. As such, the deliberate indifference standard can not be met for the time of Plaintiff's booking on July 11, 2007 and it is my recommendation Defendants' Motion for Summary Judgment on Plaintiff's claim of denial of medical care for this time frame be GRANTED.

Plaintiff returned to the Benton County Jail on November 6, 2007, from the Larimer County Jail in Fort Collins, Colorado. Plaintiff states he was sent with an official sheet and logs of the medications he was taking while in Larimer County Jail. Plaintiff also indicated at the time of booking on November 6, 2007 that he was taking zoloft, zyprexa, and lamictal, but was not under a doctor's care. Plaintiff filed no other grievances regarding his medical care until December 19, 2007, when he requested the jail to inform him of any judge's order regarding his mental health medications. On December 26, 2007 Plaintiff again requested to see mental health, and was seen by the jail doctor. The next day, Dr. Huskins requested the medical records from Dayspring. Dr. Huskins did receive the records, and began giving Plaintiff 10 mg of Thoridazine two times per day. Plaintiff was evaluated on his medication increased on two separate occasions.

As with Plaintiff's initial incarceration into the Benton County Jail, there is indication of delay in providing his medications when Plaintiff reenters Benton County in November of 2007. However, there is also a factual issue regarding the medication logs and information provided to the jail, as Plaintiff states, by the Larimer County facility. There is no indication if this information was received by Benton County, and if so, why Plaintiff received no medication until December of 2007.

Plaintiff does state he suffered harm in increased anxiety, "break downs" and suicidal thoughts. Accordingly, it is my recommendation Defendants' Motion for Summary Judgment be DENIED on Plaintiff's claim of denial of medical care for the time of his booking on November 6, 2007.

### 2. Unanswered Grievances

Plaintiff has complained his grievances went unanswered. However, as the Court has provided a summary of Plaintiff's grievances, supra, there appear to be none which are unanswered. Plaintiff's complaint appears to be with placing grievances to see the doctor, rather than medical requests, and those requests being returned with "see doctor." As also noted supra, given the requests on record, Plaintiff was evaluated by Dr. Huskins within days of his requests.

Moreover, there is no constitutional right to the answering of grievances. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). It is my recommendation the Defendants' Motion for Summary Judgement regarding unanswered grievances be GRANTED.

### 3. Access to the Courts

Plaintiff claims he was denied access to the Courts when he was not allowed to use the law library. Defendants state Plaintiff had access to his public defender at this time. "To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007) (citations omitted). "To prove actual injury, [a prisoner] must 'demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded.'" *Id.* (quoting *Lewis v. Casey,* 518 U.S. 343, 353 (1996)).

Plaintiff requested the law library on December 30, 2007.  At this time he was shown to be represented by his public defenders, and was told to contact those attorneys.  On January 3, 2008 Plaintiff again made a law library request.  The record shows this request was granted.  Plaintiff states he pled guilty to charges out of fear of staying in Benton County, but he does not state how that fear is related to his requests to go to the law library.  Plaintiff states no other injury which occurred from this denial.   Thus, it is my recommendation that Defendants' Motion for Summary Judgment be granted on the issue of access to the law library.

    4.  Freedom of Religion

Plaintiff argues he was denied freedom of religion when he was told he could keep one religious book and two other books, but not a Book of Mormon and a Bible.  Plaintiff states Defendant Pop acted unconstitutionally by taking his Bible, instead of letting him have both the Bible and his Book of Mormon.

As an initial matter, a person claiming that a governmental policy or action violates his right to exercise his religion freely must establish that the action substantially burdens his sincerely held religious belief. *See* Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. § 2000bb-1 (1994); *Ochs v. Thalacker,* 90 F.3d 293, 296 (8th Cir. 1996) (RFRA analysis); *Brown v. Polk County, Iowa,* 61 F.3d 650, 656, 660 (8th Cir.1995) (non-RFRA analysis). Only after the plaintiff first fulfills this duty must the government prove that its policy is the least restrictive means to further a compelling governmental interest.

In order to be considered a "substantial" burden, the governmental action must 'significantly inhibit or constrain conduct or expression that manifests some central tenet of a [person's] individual [religious] beliefs; must meaningfully curtail a [person's] ability to express adherence to his or her

faith; or must deny a [person] reasonable opportunities to engage in those activities that are fundamental to a [person's] religion.' *Id.* (quoting *Werner v. McCotter,* 49 F.3d 1476, 1480 (10th Cir.), *cert. denied, Thomas v. McCotter,* 515 U.S. 1166 (1995)); *see also Weir v. Nix,* 114 F.3d 817, 820 (8th Cir. 1997).

Plaintiff has not established how the one religious book limit is a substantial burden to his religious practices. It appears Plaintiff could have substituted the Bible for the Book of Mormon at will, he was not continually denied either book, rather he was denied the ability to have them at the same time. Just as in *Weir*, "the limit os only on the number of books an inmate can have at any one time." *Id.* at 821. Moreover, this appears to be an evenly applied rule for all inmates regardless of the religious book they were seeking to keep. There is no indication religions other than Plaintiff were allowed to bypass the one religious book rule. Accordingly, I recommend that Defendants' Motion for Summary Judgment regarding Plaintiff's claims of denial of freedom of religion be GRANTED.

<u>5. Excessive Force</u>

Plaintiff claims excessive force was used against him on July 7, 2007. Plaintiff can not remember a portion of the events, but he is able to recount that he woke up on the floor of the Benton County Detention Center holding cell. When he knocked on the window of his cell, he states the officers charged his cell, shackled him, and began to lift and drop him several times. He was then slammed to the floor without any orders or warning and was placed in five-point restraints for two hours.

Defendants describe Plaintiff as resisting and refusing to comply with orders from the time of his arrival in the Benton County Jail, Plaintiff was hitting the door, cursing, and refused to comply

with orders to move to the back of the cell. Plaintiff was sprayed with OC spray due to his resistance and then decontaminated. Plaintiff was still loud and aggressive, so Defendants Tomlin, Vanatta, and Torres ordered Plaintiff to the back of his cell. Plaintiff refused and he was placed on the floor and then in five point restraints for two hours.

In situations in which excessive force is alleged by a person in custody, the constitutional standard applied may vary depending upon whether the victim is an arrestee, a pretrial detainee, or a convicted inmate of a penal institution. If the victim is an arrestee, the Fourth Amendment's "objective reasonableness" standard controls. *Graham v. Connor,* 490 U.S. 386, 388 (1989). The evaluation of excessive-force claims brought by pre-trial detainees, although grounded in the Fifth and Fourteenth Amendments rather than the Fourth Amendment, also relies on an objective reasonableness standard. *Johnson-El v. Schoemehl,* 878 F.2d 1043, 1048-49 (8th Cir.)

Excessive-force claims brought by prisoners fall under the protections provided by the Eighth Amendment's prohibition of cruel and unusual punishment. *Whitley v. Albers,* 475 U.S. 312, 318-22 (1986). We consider "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 320-21, *see also Estate of Davis v. Delo,* 115 F.3d 1388, 1394 (8th Cir.1997).

Accepting Plaintiff's facts as true, as is required at the Summary Judgment stage, there appears to be a genuine issue of fact regarding whether the force was applied in good-faith to maintain and restore disciple, or whether the force was malicious. Clearly, there was an altercation between Defendants Tomlin, Vanatta, Torres, and Plaintiff. However, Plaintiff has not named Tomlin, Vanatta, or Torres as Defendants to this lawsuit. Thus, it is my recommendation Defendants' Motion for Summary Judgment be GRANTED regarding Plaintiff's claims of excessive

force.

### III.  Conclusion

For the reasons stated above, it is my recommendation that Defendant's Motion for Summary Judgment (Doc. 17) be **GRANTED** in part and **DENIED** in part.  I recommend Defendants' Motion for Summary Judgment be GRANTED as to the claims of denial of medical care related to the July 7, 2007 booking, denial of response to grievances, denial of access to the law library, used of excessive force, and denial of freedom of religion.  I recommend Defendants' Motion for Summary Judgment be DENIED as to the claims of denial of medical care related to the November 6, 2007 booking, the claim of an unconstitutional policy and/or procedure related to mental health medical care and screening.  For those reasons, I additionally recommend this case be dismissed as to Defendant Pop.

**The parties have ten (10) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **27th day of August, 2009.**

                                                            /s/ J.  Marschewski  
                                                               HON.  JAMES MARSCHEWSKI  
                                                                UNITED STATES MAGISTRATE JUDGE